JAMES R. TENERO        (SBN 201023)
DEBRA B. BRANSE        (SBN 175771)
SELMAN LEICHENGER EDSON HSU NEWMAN & MOORE LLP
33 New Montgomery, Suite 1850
San Francisco, CA 94105-4537
Telephone    :      415.979.0400
Email         :      jtenero@selmanlaw.com
              :      dbranse@selmanlaw.com

SHERYL W. LEICHENGER (SBN 161688)
SELMAN LEICHENGER EDSON HSU NEWMAN & MOORE LLP
10880 Wilshire Blvd., Suite 1200
Los Angeles, CA 90024
Telephone    :      310.445.0822
Email         :      sleichenger@selmanlaw.com

Attorneys for Plaintiff
EVEREST NATIONAL INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVEREST NATIONAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SACRAMENTO, a municipal corporation of the State of California,<br><br>Defendants. | Case No.<br><br>**EVEREST NATIONAL INSURANCE COMPANY'S COMPLAINT FOR:**<br><br>**(1) DECLARATORY RELIEF – NO DUTY TO DEFEND**<br><br>**(2) DECLARATORY RELIEF – NO DUTY TO INDEMNIFY**<br><br>**(3) REIMBURSEMENT** |

Plaintiff Everest National Insurance Company ("Everest National") brings this Complaint against Defendant County of Sacramento (the "County of Sacramento").

### THE PARTIES

1.      Plaintiff Everest National was at all times herein mentioned, and currently is, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in New Jersey, and duly authorized to transact business in the County of Sacramento, State of California.

1

3062 105856 4907-0754-9200 .v2

1    2.    Defendant County of Sacramento is a political subdivision of the State of California

2  operating as a county government, located within the County of Sacramento, State of California.

3                              **JURISDICTION AND VENUE**

4    3.    This Court has jurisdiction over the action under 28 U.S.C. § 1332(a)(1) and (c)(1)

5  because there is complete diversity of citizenship between the parties and the amount in

6  controversy exceeds $75,000.00, exclusive of interest.

7    4.    Venue is proper in the Eastern District of California under 28 U.S.C. § 1391 in that

8  all of the events giving rise to this action occurred in this district.

9              **COMPLIANCE WITH THE GOVERNMENT CLAIMS ACT**

10    5.    Defendant County of Sacramento is, and at all relevant times herein mention, was

11  a political subdivision of the State of California operating as a "public entity" (i.e., a county) as

12  defined by Government code, section 811.2.

13    6.    While Everest National does not concede that the Government Claims Act (i.e.,

14  Government Code, section 810 *et seq.*) applies to the subject relief (i.e., recovery of insurance

15  benefits pursuant to *Blue Ridge Ins. Co. v Jacobsen* (2001) 25 Cal.4th 489), on October 8, 2024,

16  Everest National, out of an abundance of caution, filed a pre-litigation written claim ("written

17  claim") which the Clerk of the Board of Supervisors, 700 H Street, Room 2450, Sacramento,

18  California 95814. A true and correct copy of the written claim is attached hereto as **Exhibit A**.

19    7.    As stated in the written claim and as alleged herein, pursuant to *Blue Ridge*, Everest

20  National seeks the recovery of the money it expended defending and indemnifying its insured, the

21  County of Sacramento, in two underlying actions – the *Hardesty* and *Schneider* actions.

22    8.    On October 9, 2024, the County of Sacramento sent Everest National written

23  correspondence acknowledging receipt of the written claim, assigning it claim number L1100015-

24  0004.  The acknowledgement letter advised that Everest National's written claim "has been

25  processed by our office and forwarded to the County of Sacramento's Third-Party Liability Claim

26  Administrator (TPA), George Hills Co. for handling."   A true and correct copy of the

27  acknowledgement letter is attached hereto as **Exhibit B**.

28  ///

Selman Leichenger Edson Hsu Newman & Moore LLP
ATTORNEYS AT LAW

EVEREST NATIONAL INSURANCE COMPANY'S COMPLAINT

3062 105856 4907-0754-9200 .v2

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

9.   On October 29, 2024, Everest National, through its counsel of record herein, Selman Leichenger *et al.*, received email correspondence from the County of Sacramento's coverage counsel in the underlying *Hardesty* and *Schneider* actions, Lehavi Stargardter LLP.  In that email correspondence, Lehavi Stargardter LLP requested a telephone conference to discuss the written claim.

10.   On or about October 30, 2024, counsel with Lehavi Stargardter LLP and Selman Leichenger *et al.* discussed Everest National's written claim in a telephone conference.  No resolution was reached at that time.

11.   More than 45 days have now passed since Everest National's written claim was presented to the Sacramento County Board of Supervisors.  Everest National and the County of Sacramento did not, in writing or otherwise, agree to "extend the period within which the board is required to act on the application […]."  (Cal. Govt. Code, sections 911.6 and 912.4.)  Having "fail[ed] or refus[ed] to act on the application [i.e., Everest National's written request] within the time prescribed by this section, the application shall be deemed to have been denied on the 45th day[,]"  (Cal. Govt. Code, section 911.6(c) and 912.4(c).)   Therefore, Everest National is now authorized by law to file this action.

## THE EVEREST NATIONAL EXCESS POLICY

12.   Everest National issued to the County of Sacramento a Public Entity Excess Liability Policy, Policy No.  71P2000030-081 (effective 07/01/2008 - 07/01/2009) (the "Everest National Policy"), a true and correct copy of which, except for the redaction of premium information, is attached hereto as **Exhibit C.**

13.   The Everest National Policy provides Errors and Omissions Liability Coverage, subject to limits of liability of $10,000,000 for any one "wrongful act" or series of continuous, repeated, or related "wrongful acts" in excess of a $2,000,000 "retained limit." Coverage under the Everest National Policy is also subject to a $10,000,000 Errors and Omissions Liability Aggregate, other than "wrongful acts" of "personal injury offense" or "advertising injury offense."

///

///

EVEREST NATIONAL INSURANCE COMPANY'S COMPLAINT

3062 105856 4907-0754-9200 .v2

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

14.    The Insuring Agreement of the Everest National Policy provides in relevant part:

> **SECTION I. COVERAGES**
> * * *
> **2.    ERRORS AND OMISSIONS LIABILITY**
>
> We will pay on behalf of the insured, the "ultimate net loss", in excess of the "retained limit", that the insured becomes legally obligated to pay to compensate others for loss arising out of your "wrongful act" to which this insurance applies and that takes place in the "coverage territory" during the Policy Period.

15.    The Everest National Policy defines "wrongful act," in relevant part, as:

> **NN.    "Wrongful act" means:**
>
> Any actual or alleged error or misstatement, omission, negligent act, or breach of duty including misfeasance, malfeasance, and nonfeasance by you, including, but not limited to, those constituted by:
>
> 1.    Any violation of antitrust statutes;
>
> 2.    Any negligent ministerial act;
>
> * * *

16. The Everest National Policy includes the following defense provision:

> **B.    DEFENSE**
>
> We will have the right and duty to defend the insured against any "claim" or "suit" seeking damages for [...] "wrongful acts" [...] to which this insurance applies when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" or your self-insured retention of the "retained limit" have been exhausted by payment to a third party of judgments, settlements, or defense costs, or by payment of "covered first-party automobile expenses". When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply.  However, we will have no duty to defend the insured against any "suit" seeking damages for [...] "wrongful acts" [...] to which this insurance does not apply. [...]
>
> * * *

/ / /

/ / /

/ / /

4

3062 105856 4907-0754-9200 .v2

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

17. The Everest National Policy contains the following provision:

> **SECTION III.     LIMITS OF INSURANCE**
> \* \* \*
>
> **6.** In determining the Limits of Insurance that apply:
> \* \* \*
>
>     b.    All "wrongful acts" arising out of continuous, repeated, or related "wrongful acts" shall be treated as a single "wrongful act" and Limits of Insurance in effect at the time of the first "wrongful act" shall apply; [...]

18. The Everest Policy contains the following provision:

> **SECTION IV. GENERAL CONDITIONS**
> \* \* \*
>
> **3.** **Duties in The Event of an "Occurrence", "Wrongful Act", "Employment Practice Liability Wrongful Act", "Employee Benefit Wrongful Act" or "Claim" or 'Suit"**
>
>     a.    You must see to it that we are notified as soon as practicable of an "occurrence", "wrongful act", "employment practice liability wrongful act", or "employee benefit wrongful act", regardless of the amount, which may result in a "claim". To the extent possible, notice should include:
>
>         (1)    How, when and where the "occurrence", "wrongful act", "employment practice liability wrongful act", or "employee benefit wrongful act" took place;
>
>         (2)    The names and addresses of any injured persons and witnesses; and
>
>         (3)    The nature and location of any injury or damage arising out of the "occurrence", "wrongful act", "employment practice liability wrongful act", or "employee benefit wrongful act".
>
>     b.    If a "claim" is made or "suit" is brought against any insured, you must:
>
>         (1)    Immediately record the specifics of the "claim" or "suit" and the date received; and
>
>         (2)    Notify us as soon as practicable.
>
>     c.    You and any other involved insured must:

5

3062 105856 4907-0754-9200 .v2

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

> (1) Cooperate with the "underlying insurers" as required by their terms and conditions;

> (2) Pursue all rights of contribution or indemnity against any person or organization who may be liable to you because of "bodily injury", "property damage", "personal injury offense", "advertising injury offense", "wrongful act", "employment practice liability wrongful acts", or "employee benefit wrongful act" under this Policy or any "underlying insurance". This condition, however, shall not apply to the self insured retention of the "retained limit".

d. When we believe that a "claim" or "suit" may exceed the "retained limit", we may join you and, if applicable, the "underlying insurer" in the investigation, settlement and defense of all "claims" and "suits" in connection with such "occurrence", "wrongful act", "employment practice liability wrongful act", or "employee benefit wrongful act". In such event, we and you will cooperate fully with each other.

e. Special Serious "Claims" Reporting Requirements

You must see to it that we receive written notice as soon as practicable of all "occurrences", "wrongful acts", "employment practice liability wrongful act" or "employee benefit wrongful acts" for "claims" or "suits" of which you become aware which involve:

> (1) A serious case where, in which your judgment or the judgment of your defense counsel, the exposure may exceed 50% of your "retained limit";

> (2) A demand or demands totaling 50% of your "retained limit" or more;

> (3) Death;

> (4) Paralysis, paraplegia, quadriplegia;

> (5) Loss of eye(s) or limb(s);

> (6) Spinal cord or brain injury;

> (7) Sensory organ or nerve injury, or neurological deficit;

> (8) Serious burns;

> (9) Sexual abuse or molestation;

> (10) Substantial disability or disfigurement; or

6

EVEREST NATIONAL INSURANCE COMPANY'S COMPLAINT

3062 105856 4907-0754-9200 .v2

**(11)** Loss of work time of six months or more.

**f.** Such notice is to be sent with all pertinent facts as respect **SECTION IV. CONDITIONS**, paragraphs 3.a through 3.e. to the name and address listed in the Declarations, Item 6.A.

19. The Everest Policy contains the following exclusion:

---

**D.   EXCLUSIONS**

This insurance does not apply to a "claim" or "suit" against you for:

\* \* \*

20. Liability arising out of the direct condemnation of property or exercise of power of eminent domain by you or on your behalf, or inverse condemnation, **or the taking of any property by you which is compensable under the Fifth or Fourteenth Amendments to the United States Constitution**, or the taking of any property by you which is compensable under law of the State in which the "claim" or "suit" is made.

This exclusion does not apply to physical injury or to destruction of tangible property, including all resulting loss of use of such property for which you may be legally responsible and for which recovery is sought for "claims" or "suits" for inverse condemnation, by whatever name called [;] however, there shall be no coverage for reduced value of property (diminution of value), attorney fees, expert fees, severance damages, relocation costs or any other form of relief, however denominated.

(bolding added for emphasis.)

---

## THE UNDERLYING ACTIONS

20. On September 8, 2010, the *Hardesty* plaintiffs filed an action in U.S. District Court, Eastern District of California, against fourteen individual and governmental agency defendants including the Sacramento Metropolitan Air Quality Management District and the County of Sacramento. That action was entitled *Hardesty v. Sacramento Metropolitan Air Quality Management District, et al.*, Case No. 2:10-cv-02414-KJM-JFM (the "*Hardesty* action").

21. The *Hardesty* plaintiffs alleged they were the owners of Hardesty Sand and Gravel ("HSG") which operated the Schneider Family Mine under a vested right to mine which allowed HSG to legally avoid significant usual costs and charge lower prices than its competitors for aggregate material. The *Hardesty* plaintiffs alleged that HSG's competitors were angry about their

7

3062 105856 4907-0754-9200 .v2

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

1  right to avoid significant mining costs which allowed them to charge lower prices than the

2  competitors and the competitors, therefore, initiated a campaign to induce the County of

3  Sacramento to drive HSG out of business. The *Hardesty* plaintiffs allege the County of

4  Sacramento successfully shut down HSG's operations and prevented HSG from removing already-

5  processed aggregate material from the mine valued at $3.0 million.

6       22.    In May 2012, the *Schneider* plaintiffs filed an action in U.S. District Court, Eastern

7  District of California, against the County of Sacramento and six individual County employees.

8  That action was entitled *Schneider v. County of Sacramento, et al.*, Case. No. S-12-2457 KJM-

9  KJN (the "*Schneider* Action").

10      23.    The *Schneider* plaintiffs alleged that they were the owners of the "Schneider Ranch"

11  and the "Schneider Historic Mine" and that the County of Sacramento had recognized their vested

12  right to mine for decades. They alleged that they entered into a contract with the County of

13  Sacramento wherein the County of Sacramento agreed that no change in zoning could affect the

14  property without the Schneider's approval and that no such approval was given. The *Schneider*

15  plaintiffs alleged an August 23, 1994 letter from the County of Sacramento confirmed the

16  Schneider's vested interest in the mine and that the County of Sacramento would not require a use

17  permit for the mining operations. The *Schneider* plaintiffs further alleged that in 2002 the County

18  Board of Supervisors approved a 100-year reclamation plan for the mine. That same year, the

19  County of Sacramento admitted in pleadings and public hearings that the Schneiders had a vested

20  right to mine based on the reclamation plan. The *Schneider* plaintiffs alleged that between 1998

21  and 2010, the County of Sacramento performed required annual inspections of the mine without

22  noting any zoning violations or lack of permits.

23      24.    The *Schneider* plaintiffs alleged that the operators of a neighboring mine

24  complained that it could not compete with the Schneider's vested mine rights and thereafter met

25  with state officials who caused the mine to be subject to inspections by multiple agencies none of

26  which resulted in action against the Schneider's mine. The *Schneider* plaintiffs allege that on April

27  14, 2010, having failed to identify any violation, the County of Sacramento simply declared that

28  the mine lacked appropriate zoning and use permits and issued a violation notice to the Schneiders

8

3062 105856 4907-0754-9200 .v2

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

1  on that ground.

2      25.   The *Schneider* plaintiffs alleged that the operators of the neighboring mine

3  financially influenced the County of Sacramento to deprive the Schneiders of their vested right to

4  operate the mine.  While they appealed the County of Sacramento's decision, that appeal was

5  formally denied on September 28, 2010, which resulted in a complete taking of Schneider's right

6  to mine. The *Schneider* plaintiffs further alleged that on January 6, 2011, the County of Sacramento

7  ordered the Schneiders to discontinue sales of stockpiled inventory, and that the Schneider's appeal

8  of that order was denied on May 4, 2011.

9      26.   On August 15, 2014, the *Hardesty* action and the *Schneider* action were

10  consolidated under the *Hardesty* action and case number (the "Underlying Actions").

11     27.   The Third Amended Complaint was the operative complaint in the *Schneider*

12  action; a true and correct copy of the Third Amended Complaint is attached hereto as **Exhibit D**.

13     28.   As to the County of Sacramento, the *Schneider* Third Amended Complaint alleged

14  the following counts: (1) violation of procedural due process under the Fourteenth Amendment of

15  the U.S. Constitution; (2) violation of substantive due process under the Fifth and Fourteenth

16  Amendments of the U.S. Constitution; (4) violation of the right to petition for redress of

17  grievances/access to the courts under the First Amendment of the U.S. Constitution; and (5)

18  violation of the right to equal protection under the Fourteenth Amendment of the U.S. Constitution.

19     29.   Regarding the *Schneider* Plaintiffs' claims against the County of Sacramento for

20  violation of the Schneiders' rights under the Fifth and Fourteenth Amendments of the U.S.

21  Constitution, the *Schneider* Plaintiffs specifically alleged:

> 40.   Due to substantial and long term investment made in good faith reliance on existing rights, and the continuous exploration, prospecting, excavating, processing, and stockpiling the produced products, the owners of the Schneider Historic Mine have a vested right to mine.
>
> * * *
>
> 49.   The County of Sacramento in its March 2002 answer to the Sacramento Superior Court case #00CS01498, expressly admitted that the Schneider ranch had vested rights to mine which had been recognized by the County in 1994.
>
> * * *
>
> 252.   The Fourteenth Amendment of the United States Constitution guarantees to citizens of the United States, like plaintiffs, freedom from the deprivation

3062 105856 4907-0754-9200 .v2

of life, liberty and property without due process of law.

253.  Plaintiffs enjoy a Constitutionally-protected property interest in their right to produce aggregate on their ranch, and the material they have mined and stockpiled on the Property.

254.  Plaintiffs enjoyed a Constitutionally-protected liberty interest in pursuing their chosen occupation or profession of surface mining.

* * *

256.  Defendants' actions alleged above in revoking land use entitlements, asserting unfounded allegations of violations and unjustifiably increasing demanded financial reserves precluded Plaintiffs from mining or selling inventory and shock the conscience.

* * *

258.  In many instances, the Defendants' conduct was contrary to state law, their agencies' own policies and procedures […] all of which demonstrates that their conduct was arbitrary and irrational and lacking any reasonable relation to the public health, safety, morals or general welfare, and hereby violated the Plaintiffs' right to substantive due process under the Fifth and Fourteenth Amendments to the Constitution of the United States […].

30.  The Second Amended Complaint was the operative complaint in the *Hardesty* action; a true and correct copy of the Second Amended Complaint (without exhibits) is attached hereto as **Exhibit E**.

31.  As to the County of Sacramento, the *Hardesty* Second Amended Complaint alleged the following counts: (6) violation of 42 U.S.C. § 1983 Due Process and Equal Protection Clause of the Fourteen Amendment; (7) violation of 42 U.S.C. § 1983 Equal Protection of the Fourteenth Amendment; and (9) violation of 42 U.S.C. § 1983 Substantive Right to Due Process Protected by the Fourteenth Amendment.

32.  Regarding the *Hardesty* Plaintiffs' claims against the County of Sacramento for violation of the Hardestys' rights under the Fourteenth Amendment of the U.S. Constitution, the *Hardesty* plaintiffs specifically alleged:

155.  In 1994, Sacramento County recognized a vested right to mine at the Property. In 2002, the County of Sacramento reaffirmed this finding in the Reclamation Plan approval process under SMARA. Since at least 2002, there has been valid reclamation plans in place for the Mine. Accordingly, Plaintiffs have a Constitutionally-protected property interest in mining at the Property under the vested right. Since the 1994 grant of the vested right to mine the Property, there has been no intensification of mining activity outside the scope of the vested right.

* * *

157.  Defendants Sacramento County and Robert Sherry, acting under the color of state law, county ordinances, regulations, customs and usage of regulations

3062 105856 4907-0754-9200 .v2

and authority, and in violation of 42 U.S.C. §1983, have deprived Plaintiffs of the rights, privileges or immunities secured by the Due Process Clause of the Fourteenth Amendment, specifically, the right to procedural due process and substantive due process, through their ordinances, resolutions, customs and usage of regulations policy and practice by arbitrarily, intentionally and irrationally initiating proceedings to revoke – and revoking – the vested legal non-conforming use of the Mine without providing any notice or a hearing to Hardesty.

\* \* \*

166. Defendant Sacramento County, acting under the color of state law, county ordinances, regulations, customs and usage of regulations and authority, in violation of 42 U.S.C. § 1983, have deprived Plaintiffs of the rights, privileges or immunities secured by the Equal Protection Clause of the Fourteenth Amendment.

167. Moreover, the Plaintiffs enjoyed a Constitutionally-protected liberty interest in pursuing their chosen occupation or profession of surface mining.

## TRIAL AND VERDICT AGAINST THE COUNTY OF SACRAMENTO

33. On March 21, 2017, following trial, the jury concluded that the County of Sacramento had violated the *Hardesty* and *Schneider* Plaintiffs' procedural and substantive due process rights under the Fifth and Fourteenth Amendment of the U.S. Constitution and returned verdicts in their favor. The jury awarded $75 million to the *Hardesty* Plaintiffs and $30 million to the *Schneider* Plaintiffs. The jury further awarded $500,000 to the *Hardesty* Plaintiffs and $1,275,000 to the *Schneider* Plaintiffs as punitive damages.

34. Following return of the verdicts, the County of Sacramento renewed a motion for Judgment as a Matter of Law and moved for a new trial on the ground that Plaintiffs did not offer sufficient evidence to prove they possessed any liberty or property interests protected by the substantive due process clause of the Fourteenth Amendment.

35. The Court disagreed and denied the County of Sacramento's motions for Judgment as a Matter of Law and for a New Trial on March 31, 2017. The Court held that the evidence admitted at trial supported the conclusion that the County had deprived the *Hardesty* and *Schneider* Plaintiffs of their liberty interest in following their chosen profession free from unreasonable governmental interference. The Court specifically held that the *Schneider* Plaintiffs had a liberty interest as mine owners and that the *Hardesty* Plaintiffs had a liberty interest as mine operators. The Court further held that the evidence admitted at trial supported the conclusion that the County of Sacramento deprived the *Hardesty* and *Schneider* Plaintiffs of their property interest in the land

11

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

3062 105856 4907-0754-9200 .v2

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

1   as mine owners and operators.

2   36.   On June 9, 2017, judgment was entered in favor of the *Hardesty* and *Schneider*

3   Plaintiffs based on the March 21, 2017 verdict; true and correct copies of the Verdict Form and

4   Judgment are attached hereto as **Exhibit F** and **Exhibit G**.

5   ## THE COUNTY OF SACRAMENTO'S APPEAL

6   37.   The County of Sacramento requested and Everest National agreed to participate in

7   an appeal of the Judgments pursuant to reserved rights; a true and correct copy of Everest

8   National's August 24, 2018 Supplemental Coverage Position / Reservation of Rights Letter is

9   attached hereto as **Exhibit H**.

10   38.   On appeal, the United States Court of Appeals for the Ninth Circuit upheld the

11   jury's liability determinations, but remanded the Underlying Actions for a new trial on damages.

12   ## THE SETTLEMENTS

13   39.   Following the appeal, Everest National agreed to defend the County of Sacramento

14   pursuant to reserved rights; a true and correct copy of Everest National's March 14, 2023

15   Supplemental Reservation of Rights / Coverage Position Letter is attached hereto as **Exhibit I**.

16   40.   Following the appeal, the County of Sacramento demanded that Everest National

17   tender its remaining liability limit of $9,687,011.76 (i.e., $10.0 million - $312,988.24 (i.e., defense

18   fees and costs incurred to date)) to the County of Sacramento to attempt settlement of the

19   Underlying Actions. Everest National agreed to the County of Sacramento's request and tendered

20   to the County of Sacramento its remaining liability limit of $9,687,011.76 pursuant to *Blue Ridge*

21   *Ins. Co. v Jacobsen* (2001) 25 Cal.4th 489; a true and correct copy of Everest National's March

22   14, 2023 Blue Ridge Reservation of Rights Letter is attached hereto as **Exhibit J**.

23   41.   Before a new trial took place, the County of Sacramento settled the Underlying

24   Actions for a combined $78.5 million (the "Settlements"). Specifically, the County of Sacramento

25   settled the *Hardesty* Action for $58.5 million (the "*Hardesty* Settlement"), and the *Schneider*

26   Action for $20 million (the "*Schneider* Settlement") (collectively, the "Settlements").

27   42.   By a November 2, 2023 check, Everest National paid its remaining liability limit

28   of $9,687,011.76 to the County of Sacramento, pursuant to the *Blue Ridge* reservation.

EVEREST NATIONAL INSURANCE COMPANY'S COMPLAINT

3062 105856 4907-0754-9200 .v2

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

43.     On information and belief, Everest National alleges that the County of Sacramento funded, in part, the *Schneider* Settlement with Everest National's remaining liability limit of $9,687,011.76.

## FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF

### (NO DUTY TO DEFEND)

44.     Everest National incorporates paragraphs 1 through 43 above by reference as though fully set forth herein.

45.     An actual controversy exists between Everest National and the County of Sacramento with respect to Everest National's duty to defend the County of Sacramento against the Underlying Actions.

46.     Everest National contends it did not have a duty to defend the County of Sacramento against the Underlying Actions based on policy provisions, including, but not limited to the notice provisions and Exclusion 20 (the "Takings Exclusion"), and the County of Sacramento disputes that contention.

47.     Declaratory relief will resolve some or all of the disputes and controversies between Everest National and the County of Sacramento. Such a declaration is necessary and proper at this time in order to determine the respective rights and obligations of the parties.

48.     This request for declaratory relief is necessary and appropriate as Everest National has no other adequate or speedy remedy at law to resolve this controversy.

## SECOND CAUSE OF ACTION FOR DECLARATORY RELIEF

### (NO DUTY TO INDEMNIFY)

49.     Everest National incorporates paragraphs 1 through 48 above by reference as though fully set forth herein.

50.     An actual controversy exists between Everest National and the County of Sacramento with respect to Everest National's duty to indemnify the County of Sacramento for the Settlements.

51.     Everest National contends that it did not have a duty to indemnify the County of Sacramento for the Settlements based on policy provisions, including, but not limited to the notice

EVEREST NATIONAL INSURANCE COMPANY'S COMPLAINT

3062 105856 4907-0754-9200 v2

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

1  provisions, Exclusion 20 (the "Takings Exclusion"), and California Insurance Code, section 533,

2  and the County of Sacramento disputes that contention.

3       52.     Declaratory relief will resolve some or all of the disputes and controversies between

4  Everest National and the County of Sacramento. Such a declaration is necessary and proper at this

5  time in order to determine the respective rights and obligations of the parties.

6       53.     This request for declaratory relief is necessary and appropriate as Everest National

7  has no other adequate or speedy remedy at law to resolve this controversy.

8                    **THIRD CAUSE OF ACTION FOR DECLARATORY RELIEF**

9                                      **(REIMBURSEMENT)**

10      54.     Everest National incorporates paragraphs 1 through 53 above by reference as

11  though fully set forth herein.

12      55.     In defending the County of Sacramento against the Underlying Actions, Everest

13  National paid defense fees and costs totaling $312,988.24.

14      56.     In settling the Underlying Actions, Everest National paid $9,687,011.76 pursuant

15  to *Blue Ridge Ins. Co. v Jacobsen* (2001) 25 Cal.4th 489;

16      57.     Everest National has paid its $10 million policy limit to the County of Sacramento

17  in defense fees and costs, and to fund portions of the Settlements, subject to a reservation of Everest

18  National's right to seek reimbursement based on its policy's terms, conditions, and exclusions,

19  including but not limited to the right to recoup from the County of Sacramento any and all amounts

20  paid under the Everest National Policy for which it is determined coverage was not afforded.

21      58.     Coverage under the Everest National Policy for claims asserted against the County

22  of Sacramento in the Underlying Actions is barred based on various provisions, including, but not

23  limited to, the notice provisions, Exclusion 20 (the "Takings Exclusion"), and California Insurance

24  Code, section 533.

25      59.     Accordingly, any amounts paid by Everest National in defense against and

26  settlement of the Underlying Actions are not and were not owed by Everest National.

27      60.     In light of the jury verdicts rendered in the trial of the Underlying Actions, the

28  amounts paid by Everest National to the County of Sacramento for defense and to fund portions

EVEREST NATIONAL INSURANCE COMPANY'S COMPLAINT

3062 105856 4907-0754-9200 .v2

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

1  of the Settlements were reasonable.

2      61.    It would be unjust and inequitable to allow the County of Sacramento to keep the

3  benefit of amounts paid under the Everest National Policy for which the County of Sacramento

4  did not contract and to which it was not entitled.

5      62.    Accordingly, Everest National is entitled as a matter of law and equity to recoup

6  the $10 million paid to the County of Sacramento for purposes of defense and settlement.

7                                **PRAYER FOR RELIEF**

8      WHEREFORE, Everest National prays for judgment against the County of Sacramento as

9  follows:

10     1.    That the Court render a declaratory judgment as to the respective rights and

11  obligations of the parties under the Everest National Excess Policy issued to the County of

12  Sacramento in connection with the Underlying Actions regarding defense and indemnity;

13     2.    That the Court order the County of Sacramento to reimburse Everest National for

14  the full amount of the policy limits paid to the County of Sacramento ($10 million) under the

15  Everest Policy, plus interest.

16     3.    Awarding Everest National costs of suit incurred in bringing this action; and

17     4.    For such other and further relief as the Court may deem just and proper.

18

19  DATED: January 29, 2025              SELMAN LEICHENGER EDSON HSU
                                        NEWMAN & MOORE LLP
20

21

22                                By: _____
                                        JAMES R. TENERO
23                                      SHERYL W. LEICHENGER
                                        Attorneys for Plaintiff
24                                      EVEREST NATIONAL INSURANCE
                                        COMPANY
25

26

27

28

                                        15

3062 105856 4907-0754-9200 .v2